# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL ACTION NO. 1:17-CV-00016-MR-DSC

| | |
|---|---|
| TIMOTHY CHARLES ROBINSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BUNCOMBE COUNTY, JACK VAN )<br>DUNCAN, AND WESTERN SURETY )<br>COMPANY, )<br>)<br>Defendants. ) | **MEMORANDUM AND<br>RECOMMENDATION AND ORDER** |

THIS MATTER is before the Court on "Defendant, Sheriff Jack Van Duncan's, Motion to Dismiss Plaintiff's Amended Complaint" (Doc. 16), "Defendant Western Surety Company's Motion to Dismiss Plaintiff's Amended Complaint" (Doc. 17), "Buncombe County's Motion to Dismiss" (Doc. 18), and the parties' associated briefs and exhibits. See Docs. 16-1, 17-1, 18-1, 21 and 23.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) and the subject Motions are ripe for disposition.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendants' Motions to Dismiss be granted as to Plaintiff's federal claims and that the Court decline supplemental jurisdiction over the remaining state law claims, as discussed below.

# I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Accepting the factual allegations of the First Amended Complaint (Doc. 14) as true, Plaintiff was incarcerated in the Buncombe County Detention Center during January 2014 as a result of a civil contempt order entered on December 9, 2013. At that time, Plaintiff was suffering from hypertension and had been prescribed Verapamil. Upon his arrival at the Detention Center, Plaintiff informed staff that he required Verapamil for his hypertension and asked to retrieve his medication from his residence. His request was denied and he was placed on Hydrochlorothiazide (HCTZ), a diuretic, at a dose of fifty milligrams per day. Plaintiff alleges that it is common knowledge that use of HCTZ may result in dangerous levels of potassium.

Shortly after his incarceration, he began to develop muscle cramps, swollen feet and legs, headaches, generalized malaise, weakness, leg cramps, and severe pain. Plaintiff alleges that he passed out on several occasions. He was denied a sick call to see a nurse. He was informed that he needed money in his inmate account in order to have a sick call. His condition deteriorated and samples of his blood were taken by jail staff on January 20, 2014 and submitted to Quest Diagnostics for analysis.

On January 21, 2014, Rebecca Freeman, a member of jail staff, received a report from Quest Diagnostics that Plaintiff's potassium levels were abnormal at 2.7. Freeman immediately conveyed this information to Dr. Steadman who ordered Plaintiff's emergency transport to the hospital. Plaintiff arrived at Mission Hospital with a critical potassium level of 2.4. He was given oral and IV replenishment of potassium and admitted to the Heart Intensive Care Unit. He remained in the Intensive Care Unit receiving treatment for depleted potassium or hypokalemia until he was discharged on January 29, 2014. Upon his discharge he was referred for continuing treatment for hypokalemia at Western North Carolina Community Health Services.

Plaintiff claims under 42 U.S.C. § 1983 that Sheriff Van Duncan failed to train, oversee, supervise and direct the conduct of the medical staff and jailers at the Buncombe County Detention Center. Plaintiff alleges that as a result, his right to receive medical care while seriously ill and in the custody of the Buncombe County Detention Center was purposefully, repeatedly and unnecessarily denied in violation of the Eight Amendment and the provisions of North Carolina General Statute §153A-225 et seq. Plaintiff also alleges a claim for intentional infliction of emotional distress against Van Duncan and his agents and employees as well as claims against Van Duncan and Buncombe County for violations of North Carolina General Statute §153A-224 and §58-76-5.

Defendants moved to dismiss Plaintiff's initial Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In response, Plaintiff amended his Complaint as a matter of right pursuant to Rule 15 of the Federal Rules of Civil Procedure. See Doc. 14. On March 20, 2017, Defendants filed their renewed Motions to Dismiss Plaintiff's Amended Complaint. See Docs. 16-18. Defendants' Motions have been fully briefed and are ripe for disposition.

## II. DISCUSSION

### A. Standard of Review

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to

relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

**B. <u>Section 1983 Medical Claim</u>**

Plaintiff seeks damages for violation of his civil rights under 42 U.S.C. § 1983 alleging inadequate medical care and Sheriff Van Duncan's failure to properly train, oversee and supervise his jailers and medical staff.

In order to prevail under § 1983, Plaintiff must (1) show that he was deprived of a right secured by the Constitution or laws of the United States and (2) set forth sufficient factual allegations to support that the alleged deprivation was committed by a person acting under color of state law. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988) (to state a § 1983 claim, plaintiff must "allege the violation of a right secured by the Constitution and laws of the United States"). Furthermore, 42 U.S.C. § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those part of the United States Constitution…." <u>Baker v. McCollan</u>, 443 U.S. 137, 144, fn. 3 (1979).

Plaintiff invokes the Eighth Amendment in support of his claim. The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments" and protects inmates from inhumane treatment. U.S. Const. amend VIII; <u>Williams v. Benjamin</u>, 77 F.3d 756, 761 (4th Cir. 1996). Under the Due Process Clause of the Fourteenth Amendment, pretrial detainees are entitled to the same standard of medical care afforded other inmates under the Eighth Amendment. <u>Martin v. Gentile</u>, 849 F.2d 863, 871 (4th Cir. 1988).

A claim based upon deliberate indifference has both objective and subjective elements. <u>Estelle v. Gamble</u>, 429 US 97, 104 (1976); see also <u>Farmer v. Brennan</u>, 511 U.S. 825 (1970); <u>Iko v. Shreve</u>, 535 F.3d 225 (4th Cir. 2008). Objectively, the inmate's medical condition must be "serious" in the sense that it has "been diagnosed by a physician as mandating treatment or ... is

so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Jackson v. Lightsey, 775 F.3d 170,178 (4th Cir. 2014)(quoting Iko, 535 F.3d at 241). Subjectively, the prison official must have "actual... knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's [own] action or inaction." Id. (citing Farmer, 511 U.S. at 837). The subjective component is an "exacting standard" that demands proof of intent beyond mere negligence, errors in judgment, inadvertent oversights, or disagreements about the prisoner's treatment plan. Id.

Only when an action meets both the objective and subjective elements will it offend the "evolving standards of decency" in such a way as to violate the Eighth Amendment's prohibition against "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104-06; Farmer, 511 U.S. at 834; U.S. Const. amend VIII. Only "extreme deprivations" are sufficient to constitute a violation of the Eighth Amendment. De'lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003).

"In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. A prison official's duty under the Eighth Amendment is to ensure reasonable safety." Farmer, 511 U.S. at 844, (internal quotation marks omitted). The behavior alleged must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 8 F.2d 848, 851-52 (4th Cir. 1990). Actual knowledge or awareness on the part of the alleged inflictor is essential to proof of deliberate indifference "because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment." Farmer, 511 U.S. at 844.

An inmate is not entitled to unqualified access to health care and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the inmate. Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977). Likewise, "[d]isagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment." Steele v. Faulcon, No. 5:14-CT-3298-F, 2017 WL 1030702, at *6 (E.D.N.C March 15, 2017) (quoting Jordan v. Fischer, 773 F. Supp. 2d 255, 276 (N.D.N.Y. 2011)); see also Estelle, 429 U.S. at 105-06; Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (A disagreement "between an inmate and a physician over the inmate's proper medical care [does] not state a § 1983 claim unless exceptional circumstances exist.").

The allegations in Plaintiff's First Amended Complaint do not rise to the level of deliberate indifference necessary to support a § 1983 Eighth Amendment claim. Plaintiff has not shown that Defendants acted with deliberate indifference toward his medical needs. As detailed above, Plaintiff was given HCTZ upon entering the Detention Center. Blood samples were taken later, and Plaintiff was transported to the hospital when abnormal potassium levels were detected. These allegations fall short of establishing that Defendants were "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier, 896 F.2d at 851. These allegations show nothing more than a disagreement between Plaintiff and jail medical staff about what medication should be prescribed. Such a disagreement falls short of showing that Defendants subjectively acted with a "sufficiently culpable state of mind" to violate the Eighth Amendment. De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003); see Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013) ("Jackson's dispute with Defendants' decision not to authorize the particular treatment program he requested…amounts to a disagreement with his

course of treatment that is not cognizable under the Eighth Amendment."); Richardson v. Grievance Coordinator, No. 7:14cv470, 2014 WL 5147916, at *1 (W.D.Va. Oct.14, 2014) ("A claim concerning a disagreement between an inmate and medical personnel regarding diagnosis or course of treatment does not implicate the Eighth Amendment."). For those reasons, the undersigned respectfully recommends that the Motion to Dismiss Plaintiff's § 1983 claim be granted.

### C. Section 1983 Supervisory Liability Claim

To establish supervisory liability under § 1983, "a plaintiff must show actual or constructive knowledge of a risk of constitutional injury, deliberate indifference to that risk, and an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999)(citing Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.1994)). See also Monell v. New York City Dep't of Soc. Serv., 436 U.S. 658, 691 (1978).

For the same reasons discussed above, Plaintiff has also failed to establish the requisite constitutional injury that is a condition precedent to imputing supervisory liability to Defendant Van Duncan. For those reasons, the undersigned respectfully recommends that the Motion to Dismiss Plaintiff's § 1983 supervisory liability claim be granted.

### D. Supplemental Jurisdiction of State Law Claims

Once all federal claims have been dismissed, district courts may decline to exercise supplemental jurisdiction over any remaining state law claims. 28 U.S.C. § 1367(c)(3); Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995) (under § 1367(c), the district courts "enjoy wide latitude in determining whether or not to retain [supplemental] jurisdiction over state claims when all

federal claims have been extinguished") (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). Declining supplemental jurisdiction where all federal claims have been dismissed is consistent with the general principle that federal jurisdiction is limited. Chesapeake Ranch Water Co. v. Board of Com'rs of Calvert County, 401 F.3d 274, 277 (4th Cir. 2005) (having dismissed federal claims, district court properly declined supplemental jurisdiction of state claims). See also Mercer v. Duke University, 401 F.3d 199, 202 (4th Cir. 2005); Pineville Real Estate Operation Corp. v. Michael, 32 F.3d 88, 90 (4th Cir. 1994).

"[I]t is well-settled that a district court's power to remand pendent state claims to state court is inherent in statutory authorization to decline supplemental jurisdiction under § 1367(c)." Battle v. Seibels Bruce Ins. Co., 288 F.3d 596, 606 (4th Cir. 2002) (citing Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 617 (4th Cir. 2001) (noting that circuit courts of appeal unanimously hold that power to remand is inherent in § 1367(c)).

Accordingly, for those reasons the undersigned respectfully recommends that this Court decline supplemental jurisdiction over Plaintiff's state law claims.

### III. ORDER

**IT IS ORDERED** that all further proceedings in this action, including <u>all</u> discovery, are **STAYED** pending the District Judge's ruling on this Memorandum and Recommendation and Order.

### IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendant, Sheriff Jack Van Duncan's, Motion to Dismiss Plaintiff's Amended Complaint" (Doc.

16), "Defendant Western Surety Company's Motion to Dismiss Plaintiff's Amended Complaint" (Doc. 17), and "Buncombe County's Motion to Dismiss" (Doc. 18) be **GRANTED**. The undersigned further recommends that Plaintiff's 42 U.S.C. § 1983 claims be **DISMISSED WITH PREJUDICE** and that the Court **DECLINE SUPPLEMENTAL JURISDICTION** over Plaintiff's remaining state law claims.

## VI. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation and Order to counsel for the parties; and to the Honorable Martin Reidinger.

**SO RECOMMENDED AND ORDERED**.

Signed: June 6, 2017

David S. Cayer
United States Magistrate Judge